W. HENRY JONES AND JOSEPH S. CUTTER, APPELLANTS, *v.* THE CITY OF PETALUMA, RESPONDENT.

PRE-EMPTION RIGHTS TO LOTS IN TOWNS AND CITIES.—The Act of Congress entitled "An Act for the disposal of coal lands and of town property in the public domain," approved July 1, 1864, and the supplementary Act thereto, approved March 3d, 1865, were designed for the benefit and relief of such persons as having settled upon the public land, might desire to lay out and establish a town or city, including their possessions; or having already laid out a town or city on unoccupied public lands, and settled upon lots or municipal subdivisions within the boundaries thereof, to enable the occupants of such town or city lots to procure a title thereto from the United States at a minimum price; and to enable other parties desiring to purchase lots within an established city or town, upon the public lands, to procure a valid title thereto.

IDEM.—In the passage of these laws, Congress had in view the individual interests of *bona fide* settlers upon small parcels of public lands, as well as the common interests of a community of persons, so contiguously settled as to justify the establishment of a city or town, and did not intend the Act for the especial benefit of municipal organizations or corporations.

IDEM.—When a portion of the public domain had been laid out as a town, into streets, blocks and lots, settled upon, occupied and appropriated, prior to the Act of July 1st, 1864, persons who, in good faith, were in the actual possession and occupation of any one or two lots, or other municipal subdivisions, with substantial improvements thereon, then actually existing, or subsequently represented by a proper map, plat, etc., filed, certified and verified by parties assuming to act for the inhabitants of the town, with the view of securing the benefits and privileges contemplated by said Act, acquired legal rights, and a vested interest in such lots or municipal subdivisions which, under the law, they had the privilege of ripening into a perfect title, and of which they could not legally be divested, except by neglect or failure on their part to avail themselves of the privileges secured by the law, or a voluntary relinquishment thereof.

APPEAL from the District Court of the Fifteenth District, City and County of San Francisco.

The case is stated in the opinion.

*W. Henry Jones,* for Appellants.

The right to settle, appropriate or improve lands within the town borders is defined in the second section of the Act of 1864 to be a *pre-emption right.* This is a legal right which vests in the possessor an estate in the land, subject

to be defeated only by a failure to perform the conditions annexed to it. (*Lytle* v. *State of Arkansas*, 18 Curtis U. S. S. C. 160; *United States* v. *Fitzgerald*, 14 *Id.* 128; See, also, *Phipps* v. *The State*, 7 Black. 512; *Harding* v. *Jasper*, 14 Cal. 648-9; *People* v. *Jones*, 6 Mich. 176.)

The land in question was never dedicated to public use, and no presumption of a grant to public use can arise. The land was never used for any public purpose, but has been used for private purposes only. (*Fischer* v. *The City of Benicia*, Oct. Term, 1868.)

The defendant did not acquire the land, or any interest in it, for public use, or otherwise, by means of the map, statement or proceedings. The city never settled, improved, possessed or used the land, and, therefore, is not one of the persons to whom the right to prove up and purchase the land as a pre-emption, is granted by the second section of the Act.

*F. D. Colton,* for Respondent.

*First*—The land in controversy was not subject to the general pre-emption law. No steps were taken to obtain any rights under the Town Site Act of 1844, and that Act was repealed without any reservation by the Act of July 1, 1864. (Statutes of U. S. Vol. XIII, p. 343.) Our point is, that the repeal of a pre-emption law does away with all claims under that law, when rights have not become vested by the performance by the claimant of all the requirements of the law, unless his claims are expressly saved by the repealing law. (Smith on Constitutional Construction, Secs. 761, 765, 769; *Butler* v. *Palmer*, 1 Hill, 329; *Stevenson* v. *Doe*, 8 Blackford, 508; *Barly* v. *Mason*, 4 Minnesota, 546.)

*Secondly*—We contend that the Government has dedicated this land to the public for a plaza.

By the Act of July 1st, 1864, Congress provided for the survey of towns on public lands, and for the laying out of streets and squares. It also provided for making and recording plats in the Recorder's office of the county, and for filing them in the Government offices. Although the inhabitants do this, they do it as Government officers and for the Gov-

ernment, and the surveys and plats, when filed and recorded, became Government surveys and plats.   In this case, all the steps were taken, and the Government has sold many of the lots under the survey and plats.   The law of 1864 is a public proclamation that the map recorded is a correct map of the streets, etc., of the city.   The acts of the Government amount to a dedication of this land to a public use.   If this land is not so dedicated, then it follows that no square or street of the city is so dedicated.   (*Trustees of Vincennes University* v. *State of Indiana*, 14 Howard U. S. Rep. 274; *The City of Cincinnati* v. *Lessees of White*, 6 Peters, 433; *Barclay et al.* v. *Howell's Lessee*, 6 Peters, 498; *New Orleans* v. *The United States*, 10 Peters, 712; *Breed* v. *Cunningham*, 2 Cal. 368; *Harding* v. *Jasper*, 14 Cal. 647; *Kittle* v. *Pfeiffer*, 22 Cal. 489; *Wilcox* v. *Jackson*, 13 Peters, 513.)

Sprague, J., delivered the opinion of the Court:

This is an appeal from the judgment, and is now presented for review upon the judgment roll alone.   The case was tried by the Court, without a jury, upon an agreed statement of facts prepared by the parties, and filed on the 8th day of February, 1867, upon which statement of facts, and the pleadings, on the same day, the cause was argued before the Court by the attorneys of the respective parties, and submitted.   The Court taking the same under advisement, thereafter, on the 19th day of November, 1867, judgment was rendered and entered therein in favor of defendant and against the plaintiffs.

The action is brought under the 254th Section of the Practice Act, to quiet the plaintiffs' title as against adverse claim of title by defendant.

Regarding the agreed statement of facts as special findings, the question presented by the record is, whether such facts sustain the judgment, or are inconsistent therewith.

From the pleadings and agreed statement, it appears that the village of Petaluma was located and settled upon public lands of the United States prior to September, 1854; that in September, 1854, one Columbus Tusten laid out and

established an addition to the town of Petaluma, in which the premises in controversy were designated as "Subdivision block eighteen;" that in January, 1855, Tusten, by deed duly acknowledged, in consideration of $150, conveyed the premises in controversy to Thomas L. Barnes, which deed was duly recorded in December, 1855; that Barnes, on the receipt of his deed from Tusten, on the eighth day of January, 1855, immediately entered into possession of the premises described therein, and erected a substantial fence around the same, which fence continued to exist and enclose the land at the date of the trial of this cause, and said Barnes continued in the actual possession, claiming title under his deed until the month of June, 1856, when, in consideration of $500, to him in hand paid by John Mars, he conveyed the same premises, by deed duly executed, acknowledged and delivered to said Mars, who immediately entered into possession thereof, claiming title thereto, and so continued in the actual, exclusive possession, making other and further improvements thereon, until the twenty-ninth day of December, 1865, when, in consideration of $800, to him in hand paid by plaintiff, Jones, he, by deed duly executed, acknowledged and delivered, conveyed the same premises to plaintiff, Jones, who immediately entered into the possession thereof, and continued in the actual, exclusive possession until the twenty-second day of January, 1866, when he, for a valuable consideration, conveyed by deed an undivided one half of the premises to plaintiff, Cutter, who immediately took possession with plaintiff, Jones, which joint possession of plaintiffs was actual and exclusive, and uninterruptedly continued up to the time of the trial of this cause in the Court below; that defendant is a municipal corporation in the County of Sonoma, incorporated by an Act of the Legislature of the State of California, entitled an Act to incorporate the town of Petaluma, approved April 12, 1858, by the name and style of The "City of Petaluma;" that said city was duly organized under said Act, and that the municipal powers of said city are vested by said Act in a Board of Trustees, consisting of five members, whereof Lee Ellsworth was, at the commencement of this suit, and at the time of the trial thereof, Presi-

dent, and F. W. Shattock was Clerk; that defendant, by its Board of Trustees, in the year 1858, and thereafter, annually, down to and including the year 1865, levied municipal taxes upon the land in controversy, and also upon the improvements thereon, and assessed said land and improvements for city taxes to John Mars, the grantor of plaintiffs, in each of said years, to wit, from 1858 to 1865, both inclusive, and said Mars, upon demand of the authorized officers of defendant, paid the taxes so assessed upon said land and improvements against him for seven successive years, to wit, from 1858 to 1864, both inclusive; and on the 30th day of December, 1865, tendered to the proper officers of defendant and offered to pay the city taxes, so assessed upon said lands and improvements against him for the year 1865, and defendant refused to receive the same; that the premises in controversy are within the corporate limits of the "City of Peta_luma," as defined by the Act of April 12, 1858, and were appropriated to private use by said Thomas L. Barnes, on the eighth day of January, 1855, and ever since, up to the trial of this cause, have been used for private purposes only by said Barnes and those claiming through him; that, in the month of December, 1865, the Trustees of the City of Petaluma, assuming to act in behalf of the inhabitants thereof, caused to be prepared a map and plot of the City of Petaluma, embracing about one thousand acres of the public lands of the United States, including the lands in controversy, all of which are within the corporate limits of the City of Petaluma, as defined by its Organic Act of April 12, 1858, to and upon which map was appended and exhibited representations, statements, affidavits and certificates of said Trustees, which map, plat, representations, statements, affidavits and certificates, they caused to be filed in the Recorder's office of the County of Sonoma, on the 30th day of December, 1865, and, subsequently, in January, 1866, caused certified copies thereof to be filed with the Register and Receiver of the United States Local Land Office for the district embracing the lands; and, also, transmitted a verified transcript of the same to the General Land Office of the

United States, to be filed therein ; that such map, plat, etc., so prepared and filed as aforesaid, were intended to be made under and in accordance with the provisions of an Act of Congress, entitled "An Act for the disposal of land and town property in the public domain," approved July 1, 1864, and the Act supplementary thereto, approved March 3, 1865; that it was also intended by said map, plat, representations, statements, affidavits and certificates, and the filing thereof, to divest the plaintiffs of the land described in their complaint, and to vest the same in defendant for public use, and the defendant claims, that by and through said map, plat, etc., the said land became a public plaza, and the public property of defendant; that said map, plat, representations, statements, affidavits and certificates, and the filing thereof, were made and done against the express will and objections of plaintiffs and their predecessors in interest in said land, and the defendant was not, nor were its Trustees, nor any of them, the agents of the plaintiffs, nor of their predecessors in interest, or either of them, for the purpose of making such map, plat, representation, etc., or the filing thereof, unless made such agents by mere force and operation of the aforesaid Acts of Congress ; that previous to the commencement of this action, many persons residing upon lots in the City of Petaluma embraced in said map and plat had entered their lots as the same are designated on and by said map and plat, and had obtained patents therefor from the Government of the United States ; that previous to the commencement of this suit, plaintiffs had filed with the Register and Receiver of the local United States Land Office, for the district within which the City of Petaluma is located, their declaration, claiming therein the land described in their complaint, and the right to prove up and purchase the same as a preemption ; that defendant also filed with such Register and Receiver its declaration, claiming therein the right to have and hold the same land as a public plaza ; that this contest before the Register and Receiver of said local Land Office was decided in favor of plaintiffs ; that defendant appealed from such decision to the Commissioner of the United States General Land Office, who reversed the decision of the offi-

cers of the local Land Office; that plaintiffs then duly appealed from the decision of the Commissioner of the General Land Office to the United States Secretary of the Interior, before whom the cause was pending at the time of the trial of this case, February 8, 1867; and that plaintiffs are each white male citizens of the United States, over twenty-one years of age, and residents of the City of Petaluma for many years before, and at the time of the commencement of this suit.

Upon the foregoing facts, the question arises whether plaintiffs, at the time of the commencement of this suit, were vested with such an interest in the premises described in their complaint, as entitled them to pre-empt and purchase the same from the United States, as against defendant's attempted appropriation thereof to its use as a public plaza, under and by virtue of the Act of Congress of July 1, 1864, and the supplementary Act of March 3, 1865. (U. S. Stats. at Large, Vol. XIII, pp. 343–529.) The second section of the Act of July 1, 1864, reads as follows:

"*And be it further enacted,* That in any case in which parties have already founded, or may hereafter desire to found, a city or town on the public lands, it shall and may be lawful for them to cause to be filed with the Recorder for the county in which the same is situated, a plat thereof, for not exceeding six hundred and forty acres, describing its exterior boundaries according to the lines of the public surveys, where such surveys have been executed; also, giving the name of such city or town, and exhibiting the streets, squares, blocks, lots and alleys, the size of the same, with measurements and area of each municipal subdivision, the lots in which shall each not exceed four thousand two hundred square feet, with a statement of the extent and general character of the improvements; the said map and statement to be verified under oath by the party acting for and in behalf of the persons proposing to establish such city or town; and within one month after such filing, there shall be transmitted to the General Land Office a verified transcript of such map and statement, accompanied by the testimony of two witnesses, that such city or town has been established in good faith, and when the premises are within the limits of an organized land district, a similar map and statement shall be filed with the Register and Receiver, and at any time after

filing such map, statement and testimony in the General Land Office, it shall and may be lawful for the President to cause the lots embraced within the limits of such city or town to be offered at public sale to the highest bidder, subject to a minimum of ten dollars for each lot; and such lots as may not be disposed of at public sale, shall thereafter be liable to private entry at said minimum, or at such reasonable increase or diminution thereafter as the Secretary of the Interior may order from time to time, after at least three months' notice, in view of the increase or decrease in the value of the municipal property; *provided*, that any actual settler upon any one lot, as aforesaid, and upon any additional lot in which he may have substantial improvements, shall be entitled to prove up and purchase the same as a pre-emption, at said minimum price, at any time before the day fixed for the public sale."

The supplemental Act, so far as it relates to town property, simply removes the limits fixed by the original Act for the area of towns and town lots, when a city or town existed upon the public lands prior to the passage of the Act.

These Acts were evidently designed in aid and for the benefit and relief of such persons as having settled upon the public lands, might desire to lay out and establish a town or city, including their possessions, or having already laid out and established a town or city on unoccupied public lands, and settled upon lots or municipal subdivisions within the boundaries thereof, to enable such occupants of town or city lots to procure a title thereto from the United States at a minimum price of $10, or such reasonable increase or diminution of price as the Secretary of the Interior may order, for every four thousand two hundred square feet; and, further, to provide a means by which other parties desiring to purchase lots within the limits of an established city or town upon the public lands could procure a valid title thereto. In the passage of these Acts, Congress seems to have adhered to the long established and liberal policy of the General Government toward actual settlers upon the public lands, and to have provided for the protection of the actual settler, by giving him a pre-emption right to purchase town lots upon which he had settled, not exceeding two in number.

At the date of the passage of the Act of July 1, 1864, the

defendant had been a municipal corporation, an organized city, for more than six years, and upon the territory embraced within its chartered limits, a town had been laid out and established, including the premises in controversy, for ten years ; and it is alleged by defendant, in its answer, that at the date of the passage of the above Act, there were residing upon the lands in that portion of the chartered limits of the City of Petaluma, embraced within the map and plat prepared by its Trustees under said Act, and filed on the 30th of December, 1865, two thousand persons.

The lands then embraced within the limits of the map and plat filed by the Trustees of defendant having been laid out as a town into streets, blocks and lots, settled upon, occupied and appropriated as such long before the passage of the Act of July 1, 1864, it is manifest that upon the passage of said Act, and the Act supplementary thereto of March 3, 1865, persons who, in good faith, were in the actual possession and occupation of any one or two lots, or other municipal subdivisions, with substantial improvements thereon, then actually existing or subsequently represented by a proper map, plat, etc., filed, certified and verified by parties assuming to act for the inhabitants of the town, with a view of securing the benefits and privileges contemplated by the above laws, acquired legal rights and a vested interest in such lots or municipal subdivisions, which, under the law, they had the privilege of ripening into a perfect title, and of which they could not legally be divested, except by neglect or failure on their part to avail themselves of the privileges secured by the law, or a voluntary relinquishment thereof.

From the agreed statement of facts, and the accompanying map and plat prepared, certified and filed by the Trustees of defendant, taken in connection with the legislative Act of April 12, 1858, incorporating the City of Petaluma, and defining the boundaries thereof, it is clearly manifest that that portion of the City of Petaluma southwest of Petaluma creek, with its streets, squares, blocks, lots and alleys, substantially as delineated by the map and plat filed by the Trustees of defendant on the 30th day of December, 1865, had been laid out and established as a town or city many

years prior to July 1, 1864; and it is equally clear that in December, 1865, when the Trustees of defendant undertook to prepare a map and plat of so much of said city as had been laid out on public lands, the land in controversy was a municipal subdivision of the city in the actual, exclusive possession of plaintiffs' grantor, with substantial improvements thereon, and that the same had ever been recognized as private property, and taxed as such by said city, for municipal purposes, and had never been regarded or recognized as the public property of defendant for any purpose. The attempt, then, to divest plaintiffs' grantor of his rights in the premises, so frankly confessed by defendant, by representing and making this particular subdivision as a plaza on the map and plat prepared by its Trustees, instead of numbering said subdivision as a municipal subdivision, and stating truly the general character of the improvements thereon, as required by the second section of the Act above quoted, was a palpable violation of the plain letter and spirit of these Acts of Congress, and a fraud upon the rights of private parties, which Courts of justice will not knowingly aid in consummating.

Congress, in the passage of these laws, had in view the individual interests of *bona fide* settlers upon small parcels of public lands as well as the common interests of a community of persons, so contiguously settled as to justify the establishment of a town or city, and did not intend the Act for the especial benefit of municipal organizations or corporations; and to so construe the law as to authorize under its sanction of an appropriation of private property to public use without compensation, or an arbitrary confiscation of rights of property for the benefit of municipal associations or corporations, would be a manifest perversion of the leading object and purpose of the law.

We are of opinion, therefore, that at the date of the commencement of this suit, plaintiffs had a pre-emption right to, and such a vested right in the premises described in their complaint, as entitled them to protection against the antagonistic, fraudulent claim of right and title by defendant, and that the agreed statement of facts is inconsistent with and

does not support the judgment, which should be and hereby is reversed, and cause remanded, with directions to the Court below to enter a decree for plaintiffs, as by them prayed for.