[No. 269.  Decided January 29, 1892.]

ELEANOR NEWHOUSE, *Appellant*, v. JOSEPH SIMINO,
*Respondent*.

PUBLIC LANDS—TOWNSITE—STATUTE—CONSTRUCTION—CONSTITUTIONAL
LAW.

The act of congress of March 2, 1867 ( 4 U. S. St. at large, 541),
making provisions regarding public lands of the United States settled
upon and occupied as a townsite, has a two-fold effect, being (1) a
several grant to the several occupants, and (2) a grant of all unoccupied
lots for public purposes to all the occupants as an aggregation.   A
person not an occupant of a lot in such townsite at the date of entry
cannot thereafter acquire any title to such lot from the government,
or from any other source than that in which it had been vested by
the grant.

The territorial act (Laws 1887–8, p. 218, § 8) providing that, where
two or more persons claim adversely the title to any lot in a townsite
on public lands, a trial of their respective rights shall be had in the
district court, and the result certified to the corporate authorities or
the probate judge, who shall execute and deliver to the party in
whose favor the decision is made a conveyance in fee simple for said
lot, is void, as under such a provision the trustee of the townsite

might be compelled to convey to an individual who was not an occupant at the date of entry, which is clearly unwarranted by the act of congress governing the disposal of such townsites.

*Appeal from Superior Court, Douglas County.*

Action by Eleanor Newhouse against Joseph Simino, to contest their respective claims to a lot in the townsite of Waterville. Judgment for defendant, and plaintiff appeals.

*J. P. Moore,* and *George A. Allen,* for appellant.

*R. W. Starr,* for respondent.

The opinion of the court was delivered by

HOYT, J.—The townsite of Waterville was located on public lands. Entry thereof as such townsite was duly made by the judge of probate of the proper county on the 26th day of January, 1889. The provisions of the act of congress under which such entry was made are substantially as follows:

"Whenever any portion of the public lands of the United States have been or shall be settled upon and occupied as a townsite, and therefore not subject to entry under the agricultural preëmption laws, it shall be lawful, in case such town shall be incorporated, for the corporate authorities thereof, and if not incorporated, for the judge of the county court in which such town may be situated, to enter at the proper land office, and at the minimum price, the land so settled and occupied, in trust for the several use and benefit of the occupants thereof according to their respective interests; the execution of which trust, as to the disposal of the lots in such town and the proceeds of the sale thereof, to be conducted under such rules and regulations as may be prescribed by the legislative authority of the state or territory in which the same may be situated." See act of March 2, 1867, 14 U. S. St. at Large, 541.

The legislature of the Territory of Washington duly passed an act which purported to provide regulations as

provided for in said act of congress.  Laws 1887–8, p. 216. Each of the parties to this action claimed title to lot fifteen in block six of said townsite by virtue of having been occupants thereof as required by said act.  Their respective claims were duly filed with said judge of probate, and by him duly certified to the superior court of Douglas county as required by said act of the legislature.  The appellant was denominated plaintiff and the respondent defendant, as required by said act.  The cause was tried by a jury, and a verdict and judgment rendered for defendant.  There was proof tending to show that plaintiff was an occupant of the lot at the date of the entry.  It also appeared from the proofs that the defendant was not an occupant at the date of said entry, but was such occupant at the date of the issuance of the patent to said judge of probate.

That we may correctly determine the rights of the parties under such circumstances, it is necessary to understand the nature of the grant made by said act of congress, and when the same took effect.  As to the first, there is no great difference between the parties; as to the second, the contention of appellant is, that the grant took effect fully and completely at the date of the entry, while the respondent claims that anyone who occupied a lot at the date of the patent took thereunder, even although his occupancy did not extend back to the date of entry. While, as we have stated above, there does not seem to be much dispute as to the nature of the grant, yet the above contention makes it necessary that we should examine it. What, then, is the nature of the grant?  We think it twofold:  (1) A several grant to the several occupants, and (2) a grant of all unoccupied lands, for public purposes, to all the occupants as an aggregation.  This latter grant does not very clearly appear from the act of congress, for if we adhere to the exact language of the granting portion thereof there would seem to be only a several grant to the

several occupants, and no grant of anything further. But looking at the whole section, and especially at that provision which provides for the grant conforming to regular subdivisions, as established by the United States survey, and taking into consideration the fact that the several occupancies, taken together, would never correspond exactly to such government subdivisions, it seems clear that congress intended to grant other land than that which was actually occupied by the individual settlers. This seems to us to be a reasonable construction of the language used, and such has been the holding of the courts. See *Matter of Selby*, 6 Mich. 193; *Castner v. Gunther*, 6 Minn. 119; *Winfield Town Co. v. Maris*, 11 Kan. 128; *Jones v. City of Petaluma*, 38 Cal. 397. It is true that the case of *Lechler v. Chapin*, 12 Nev. 65, by inference, establishes a different doctrine, but we are not satisfied to follow that case, especially as this precise question was not necessarily involved. See concurring opinion of BEATTY, J. If this is the nature of the grant, and if, as we understand, the respondent concedes that the grant took effect as of the date of the entry, we do not see how it can be successfully contended that a subsequent occupancy of a lot could avail for any purpose. If the grant took effect as a present grant at all at the time of entry, it so took effect entirely, and every lot in the townsite became private property, some for the several use of the individuals, the others for the general use of the body of individuals. This being so, there could, of course, be no title acquired thereafter from the government, or from any other source than that in which it had been vested by the grant. The fact that the legal title went to the judge of probate for the benefit of the real grantees could, of course, have no effect upon this proposition.

It follows that under the conceded facts the respondent had no title to the lot in question. He contends, however, that under the territorial act regulating the disposal of lots

in such cases the verdict could properly have been rendered for him, as under said act one or the other party to the action must succeed, and if plaintiff did not show a good title, he, as defendant, would have judgment. This construction of the territorial act in question is warranted by the language used, and this leads us to a consideration of said act of the legislature. The act of congress was inoperative until some provision should be made for the determination of the respective holdings of the occupants. The grant to an individual could not take effect until the extent of his occupancy had been defined and determined by some proper authority. The grant to the aggregation could not take effect until all of the individual occupancies had been defined and set aside. The providing of this machinery was left to the legislature of the territory; but, of course, the legislation thereunder must be harmonious with, and not in opposition to, the spirit of the grant. See *Matter of Selby*, and *Winfield Town Co. v. Maris, supra*. If the act of the legislature as to the rights of contesting claimants, and the effect of the judgment in an action between them, is as contended for by respondent, it is clearly unwarranted by said act of congress and must be held to be void. Under its provisions as thus construed the trustee might be compelled to convey to an individual who was not an occupant at the date of the entry, and the intention of congress thereby nullified. This provision of the act of the legislature must, therefore, be held to have less force than the necessities of the case of respondent require, if its validity is to be sustained at all. We are inclined, however, to take the same view as to the force of the language used as does respondent, and for that reason we think the provision for the determination of contesting interests absolutely void. For if it was claimed that the trustee was not bound to act upon the judgment rendered in such cases and deed in pursuance thereof, but could, notwithstanding

the same, investigate and determine for himself as to
whether or not the successful party was at the date of entry
an occupant of the lot within the meaning of the act of
congress, nothing would have been gained by the trial in
the superior court. It is doubtful whether or not the pro-
bate judge, in the absence of legislation authorizing him so
to do, has the authority to set on foot an inquiry and
thereby determine who were the beneficiaries under the
grant to him as trustee; and if he could not do this, then
the whole act of the legislature upon the subject of de-
termining the interests of the respective occupants, and the
conveying of the same to them by the trustee, is also void.
If the probate judge has not the power above indicated
unaided by legislation, then no one has been authorized to
determine the necessary question. It seems to have been
the intention of the legislature that the trustee should con-
vey to any person filing a claim, if no contesting claim was
also filed. But it is evident that the fact that such unveri-
fied claim was filed would furnish no proof of the occu-
pancy required by the act of congress. There should be
additional legislation upon the subject of the act in ques-
tion to enable the trustee or the courts to intelligently
comply with the provisions of the act of congress. It is
sufficient, however, for the purposes of this case to hold as
we do that the provisions of said act authorizing the trial
in the superior court of the rights of contesting claimants
are inoperative and void.

From which it will follow that the judgment must be
reversed, and the cause remanded with instructions to
dismiss the proceeding. Neither party will recover costs
of this appeal, or in the lower court.

ANDERS, C. J., and STILES, SCOTT, and DUNBAR, JJ., con-
cur.