THE CITY OF CHICAGO

*v.*

ELIZABETH SAWYER.

*Filed at Ottawa April 3, 1897.*

1. EASEMENTS—*twenty years' adverse user by public creates easement in alley.* Twenty years' actual, open and uninterrupted use of an alley by the public at large is sufficient to create a public easement therein.

2. ESTOPPEL—*doctrine of estoppel as applied to individuals.* As between individuals, where one by words or conduct willfully causes another to believe that a certain state of facts exists, and induces him to act thereon so as to change his previous condition, such person is estopped to afterwards deny the existence of such facts.

3. SAME—*equitable estoppel is applied to municipalities only as justice and right require.* The doctrine of equitable estoppel will be applied to a municipal corporation only as a means of preventing injustice or fraudulent results, where the acts of the municipality have induced a change of conduct in the complaining party.

4. SAME—*acts by municipality which do not work estoppel.* The institution of special assessment proceedings to pave an alley, and the subsequent abandonment of the same upon objections being filed by the owner to the confirmation, do not estop the city from afterward claiming its rights in the alley acquired by adverse user, where its acts in that regard induced no change of conduct on the part of the owner.

APPEAL from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

WILLIAM G. BEALE, Corporation Counsel, and GEORGE A. DUPUY, (W. P. THORNTON, of counsel,) for appellant:

When the acts show an intention to dedicate, the motive is immaterial. *Rees* v. *Chicago*, 38 Ill. 322.

The intent which the law means is not the secret one, but that which is expressed in the visible conduct and open acts of the owner. Elliott on Roads and Streets, 92.

Estoppel cannot be taken by inference, but must be relied on in the pleadings. *Lansing* v. *Goeway*, 2 Johns. 381.

The doctrine of estoppel is to be received in great strictness, and no fact is to be taken by inference. *Gould* v. *Richardson*, 6 Pick. 364.

The true rule of estoppel applicable to municipal corporations is: Any positive acts by municipal authorities which may have induced the action of the adverse party, and where it would be inequitable to permit the corporation to stultify itself by retracting what its officers had done, will work an estoppel. *Martel* v. *East St. Louis*, 94 Ill. 67; *Roby* v. *Chicago*, 64 id. 447; *Railway Co.* v. *Joliet*, 79 id. 39; *Logan County* v. *Lincoln*, 81 id. 156.

ARTHUR B. WELLS, for appellee:

Any relief agreeably to the case made by the bill can be had under a prayer for general relief, even though not specially prayed for. Story's Eq. Pl. sec. 40, p. 34.

Evidence to prove dedication must be clear and satisfactory. *Chicago* v. *Hill*, 124 Ill. 652; *Kyle* v. *Town of Logan*, 87 id. 64.

The burden of proving dedication is on the person claiming it. *McIntyre* v. *Storey*, 80 Ill. 129.

Every presumption is against the claim of dedication. *Bryan* v. *East St. Louis*, 12 Ill. App. 390.

In order to make a common law dedication an acceptance by the public must be proven. Mere user is not sufficient to prove such acceptance. *Waggoner* v. *North Peoria*, 155 Ill. 550; *Chicago* v. *Drexel*, 141 id. 90; *Willey* v. *People*, 36 Ill. App. 610.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On May 10, 1890, appellant, the city of Chicago, by one of its contractors, entered upon an alley in that city and began plowing, preparatory to filling, grading and paving it as a public alley. Appellee notified the contractor and city officers that she claimed the east half of the north two hundred feet of the alley as her private property. Work was stopped, and the sidewalk, which had been taken up, was replaced. Appellee then put a fence across the north end of the alley, which was removed, and when she attempted to replace it she was prevented by the police. Thereupon, on May 13, 1890, she filed the bill in this case, praying that she should be decreed to be the owner of the strip, and that the city and the contractor should be enjoined from interfering with her possession. A temporary injunction was ordered and issued. The answer of appellant admitted complainant's ownership to the center of the alley, and set up an uninterrupted user of the strip as an alley for more than twenty years by the public for foot passengers and vehicles. It also alleged that complainant had built three buildings abutting on the alley with reference to it as an alley, and had dedicated it as such, and claimed that the strip so opened and used as an alley was subject to the public easement for an alley. Testimony was taken before a master, who reported in favor of com-

plainant, and there was a final hearing on exceptions to the report. They were overruled, and decree was entered in accordance with the prayer of the bill.

The alley ran north and south through a block which was bounded on the north by Twenty-second street, east by Indiana avenue, south by Twenty-third street and west by Michigan avenue. The alley was about eighteen feet wide and about six hundred feet long. Its character as a public alley has not been questioned except as to the strip claimed by complainant and the north one hundred feet of the west half, which is claimed by the adjoining proprietor on the west side of the alley. This other proprietor also had a suit against the city concerning that part of the north end of the alley on his side which he claimed, and all testimony relating to either suit about either strip of land was taken together before the master and is brought up here in the record. The cases were not consolidated and the facts are not alike. The master reported the facts in the two cases together, giving the history of what was done by complainant's neighbor affecting the other suit and on his premises. He mentions in his report the testimony of several witnesses tending to show acts of obstruction affecting the running of the Statute of Limitations, which were wholly upon the adjoining premises, to which complainant never had or claimed any title. Complainant had nothing to do with these alleged obstructions, and the greater part of the evidence is entirely foreign to this suit. By this means we have been compelled to examine at length the whole evidence for the purpose of extracting those portions which relate to complainant's rights and separating them from the evidence for another party in another suit. That work shows the following results as to this case:

On February 23, 1853, complainant obtained title to the premises fronting on Twenty-second street and Indiana avenue, extending to the center of the block and embracing this strip. At that time the block was all prairie,

but it was afterwards gradually occupied and built up. The alley was left open, and was in public use as early as 1861. About May 29, 1865, a written instrument was executed by owners of property in the block, dedicating the alley to the public, and this dedication was recorded; but complainant did not sign it, so that it was not operative as to her property. About that time the lines of the alley became distinct and well-defined throughout its length, and they so remained afterward. A building was erected on complainant's property in that year fronting north on Twenty-second street, and extending south along the line of the alley ninety feet, and was called the "Metz building." There were two carpenter shops on complainant's property facing on the alley, occupied by tenants, and there was a sidewalk two feet wide along the side of the Metz building, running back toward the carpenter shops. The strip claimed by complainant remained open as a part of the alley in the condition described, and in constant, general public use, from the time it first began to be used, as early as 1861, until the filing of this bill, in 1890, unless there was some obstruction of it in 1871. It is claimed that there was at that time an interruption of the public use. The evidence of it rests only upon the testimony of Charles Reinheimer. He testified that he built an addition to a building for the adjoining proprietor on the west side of the alley in the year 1871; that while he was building this addition he piled the lumber which he used, on this part of the alley claimed by complainant; that there was a gate at that time across the north end of the alley at Twenty-second street, on this strip, with a padlock and chain on the gate; that the lumber was there five or six months while he was building the addition, and that after he finished it the gate was still maintained. There was no other evidence of any obstruction, and complainant was not examined to show that she had any gate there or had interfered with the public use. The alleged lumber pile, if

there at all, was not put there by complainant. It was not an obstruction created or authorized by her. It did not stop travel through the alley, and such places are frequently used for such purposes for the convenience of adjoining proprietors. Such uses are not intended or regarded as inconsistent or an interference with the public easement. But Reinheimer was certainly mistaken as to the obstructions. There were about forty-eight witnesses examined in all, and not one of them knew of such a circumstance as the lumber or gate being there, aside from him. His testimony was not in harmony with that of the other witnesses for complainant, and he was flatly contradicted by more than twenty-five witnesses, all of whom were apparently as credible as he. More than half of these witnesses derived their knowledge from constant use of the alley, and had fully as good opportunities for knowing the facts as he. There is but one possible conclusion—that is, that he was mistaken. Whether his memory was at fault or whether he got the alley confused with some other, is, of course, uncertain. There was a narrow alley running from this one east to Indiana avenue, on complainant's land, from the rear of the ninety-foot building abutting on the alley. It does not appear whether there was any gate at that alley. But whatever the correct explanation of his error may be, it is incredible that all the other witnesses should be mistaken and he be right.

The entire testimony considered, there cannot be a serious doubt that this strip of land was open and used as a part of that alley from 1861 until complainant fenced it up, in May, 1890, when the fence was at once torn down. There was nothing to show that it was left open for private use, or that it differed in any particular from the rest of the alley south of it, which was unquestionably a public alley. The use was actual, open and uninterrupted for more than twenty years, and every one who saw fit exercised the right. The use was by the public

at large,—by milk wagons, butchers' wagons, and by every variety of travel with vehicles and on foot. The people who used it filled mud holes where needed, and, so far as appears, no other repairs were needed up to a time when the city proposed to grade and pave it. This user was sufficient to create an easement.

But it is claimed that the city is estopped to claim the alley by its proceedings. The record shows that complainant offered in evidence a certified copy of an ordinance passed May 19, 1873, and which, it is said, is marked "Exhibit B." That exhibit annexed to the master's report is as follows: "Certified copy of ordinance of city of Chicago, passed May 19, 1873, for opening an alley between Twenty-second and Twenty-third street, midway between Michigan avenue and Indiana avenue." This is all there is of it, and it is neither an ordinance nor a certified copy of one. It fixes no width, and is too indefinite to work an estoppel or to have any validity. Besides, it does not provide for any condemnation or otherwise admit any adverse ownership, and there is no evidence that anything was ever done under it. It was repealed by an ordinance passed May 27, 1878. It is claimed that ordinances were afterwards passed, on July 27, 1885, and again in 1889, for curbing, grading and paving the alley. These proceedings are shown in the same manner as the ordinance of 1873, and there is no ordinance or copy of an ordinance in the record. Each time proceedings were commenced for special assessment, and each time complainant filed objections stating, among other things, that the property in question was her property, and not a public alley. In the first instance the proceedings were stayed by order of the city council, and afterward abandoned, and the last time the petition was dismissed after this suit was begun, on motion of the city attorney.

If the evidence as to these ordinances and proceedings is conceded to show all that is claimed for it, there

would be no estoppel.   As between individuals, if one by words or conduct willfully causes another to believe the existence of a certain state of things, and induces him to act upon it so as to change his previous condition, such person will be estopped to deny the truth of his representation.   While this doctrine of equitable estoppel will be applied in proper cases to a municipal corporation where it represents public rights and interests, the municipality will be estopped or not, in respect to such public right or interest, as justice and right may require. Such an estoppel can only be set up as a means of preventing injustice where there has been a change of conduct induced by the act of the municipal corporation and as a means of preventing a fraudulent result.  (*Chicago, Rock Island and Pacific Railroad Co.* v. *City of Joliet,* 79 Ill. 25; *Martel* v. *City of East St. Louis,* 94 id. 67.)   In the former case the rule was stated, and it was applied to the city because from its conduct the railroad company had a right to repose in security that it would not be disturbed in its right of way, and was encouraged to build its depot where it did.   The doctrine and its limitations were also stated in *Chicago and Northwestern Railway Co.* v. *People ex rel.* 91 Ill. 251.

Applying these principles where lands were claimed as a street, in *City of Chicago* v. *Wright,* 69 Ill. 318, it was held that the public was not estopped from making the claim by proceedings on behalf of the city to condemn the lands for a street which were never consummated, nor by reports of committees of the common council, nor by the fact that the land was taxed to the adverse claimant.  In the case of *Town of Princeton* v. *Templeton,* 71 Ill. 68, it was thought that right and justice required that the public should be estopped.  A dedication was claimed on account of a plat.  The strip claimed was separated from the street by a sidewalk and had never been traveled by the public, but was enclosed with a fence, and had been planted in trees and occupied and held as private prop-

erty for many years.   The town had received a petition
to have it, or a portion of it, condemned for widening the
street; a committee of the council had reported in favor
of it, and the report was adopted; a survey was made
and a committee appointed to assess damages, and from
that time, for many years, the town never treated the
land as its own, nor did the public ever use or treat it as
belonging to the town.   So in *City of Chicago* v. *Hill*, 124
Ill. 646, the court concluded from the proofs that there
was no intention of the owner to dedicate the land for a
street.   The city had passed an ordinance for its con-
demnation for a street, filed a petition to condemn it, and
had applied for and obtained a license of the owner to
lay a sewer through it.  Under the facts of that case jus-
tice required that the city should be estopped, and it was
so held.   But in this case it does not appear that any-
thing was done in pursuance of any ordinance which gave
complainant any right to rest in security upon any claim
that she made or which could be enforced, or that the
acts of the city induced any change in her conduct which
should prevent it from showing the truth.   In fact, it
does not appear that prior to January 20, 1886, when she
filed her objections to the first proposed special assess-
ment, she made any claim or did any act inconsistent
with the public claim.   A prescriptive right in the public
had then matured, and the public continued in the open
use of the alley under that claim.   The fact that the plan
for grading and paving the alley was abandoned in 1885,
and again in 1889, was not alone sufficient to create an
estoppel.   She lost no right, since she had none which she
could have enforced when the public desisted from pav-
ing the alley.   The user which established the right was
clearly proved, and no reason was shown which could bar
the city from asserting it.

The decree will be reversed and the cause remanded,
with directions to dismiss the bill.

*Reversed and remanded.*