(March 27, 1909.)

# BOISE CITY et al., Appellants, v. WILLIAM WILKINSON et al., Respondents.

[102 Pac. 148.]

PUBLIC LANDS—TOWNSITE ENTRIES—BY MAYOR-TRUSTEE—POWERS OF
LEGISLATURE OVER—RIGHTS OF OCCUPANTS—DEDICATION OF STREETS
AND ALLEYS.

1. Under the provisions of sec. 2387, U. S. Rev. Stat., certain
portions of the public land which have been settled upon and occu-
pied as a townsite, may be entered by the probate judge or mayor
in trust for the several use and benefit of the occupants thereof,
according to their respective interests.

2. The execution of such trust, as to the disposal of the town
lots and the proceeds of the sale thereof, is authorized to be con-
ducted under such regulations as may be prescribed by the legis-
lative authority of the state or territory in which the same is situ-
ated.

3. Under the provisions of an act of the legislature for the dis-
posal of lands in the Boise City townsite, the mayor was prohibited
from conveying to any person any portion of any street or alley
that had been declared public highways.

4. The legislature of the territory had no authority whatever to
vacate any streets or alleys in said city that had been dedicated to
the public by the city council.

5. On November 23, 1867, the mayor of said city made his ap-
plication to enter the townsite of Boise City as per official plat
filed with said application, and thereafter, on May 2, 1870, a patent
to said townsite was duly issued by the United States to the mayor,
conveying to him in trust the lands included within the plat, which
plat showed the lots, blocks, streets and alleys of said city and
included no land but what was platted, and said entry included
lands in five different sections as per government survey. The
patent so issued to the mayor related back to the date of the entry.

6. The mayor of Boise City on July 8, 1871, executed a deed to
one Cyrus Jacobs, purporting to convey to him a portion of Idaho
street. *Held*, that the mayor had no authority whatever to execute
said deed.

7. The case of *Scully v. Squier*, 13 Ida. 417, 90 Pac. 573, cited
and distinguished.

8. While the doctrine of equitable estoppel does not as a general
rule apply to a municipal corporation where it represents public

rights and interests, still there are special and peculiar cases in which the municipality will be estopped to assert a stale legal and inequitable claim. Such an equitable estoppel *in pais* will be invoked against the city where its mayor, as trustee, acting under an act of the legislature (although such act was void), deeded a portion of a street to an occupant, and the city has recognized the private ownership therein for a period of thirty-eight years, and the occupant has placed valuable and permanent improvements on such portion of the street, and to allow him to be ejected would work an effectual fraud upon the claimant and occupant.

(Syllabus by the court.)

· APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Fremont Wood, Judge.

Action in ejectment to recover for the city a portion of Idaho street. Judgment for the defendants. *Affirmed.*

Cavanah & Blake, Chas. M. Kahn, and Morrison & Pence, for Appellants.

"The dedication of said streets was complete and under such dedication the city, the representative of the public, had the right to take possession of and use them whenever the progress and development of the city should make it necessary to do so." (*Boise City v. Hon,* 14 Ida. 272, 94 Pac. 167.) In the Hon case it was something over thirty years after the dedication when an attempt was made by the city to open the street. In the case at bar there can be no question but what the filing of the plat and the issuing of the patent was a valid dedication. This matter was settled in the case of *Boise City v. Flanagan,* 6 Ida. 149, 53 Pac. 453.

After such dedication has taken place it is absolute and irrevocable, and no territorial legislature, city council or municipal officer can do anything to destroy the right of the public in said property for street purposes, and the territorial act entitled, "An act of the legislature to vacate Idaho street" was entirely void as an unauthorized act of the legislature contravening an act of Congress, and the deed from Himrod to Jacobs of the property in controversy is void and of no effect. (*Town of Aspen v. Rucker,* 10 Colo. 184, 15 Pac. 791;

*Newhouse v. Simino,* 3 Wash. 648, 29 Pac. 263; *Clark v. Titus,* 2 Ariz. 147, 11 Pac. 312; *Ashby v. Hall,* 119 U. S. 526, 7 Sup. Ct. 308, 30 L. ed. 469; *Story v. New York Elevated R. R. Co.,* 90 N. Y. 122, 43 Am. Rep. 146; *People v. Kerr,* 27 N. Y. 188.)

To permit an equitable estoppel to defeat the right of the city to that portion of Idaho street would be to say that Jacobs and his successors obtained possession to the property through void acts which gave them no rights at all, but by reason of subsequent actions of the city and its officials, under these void acts, Jacobs and his successors who never had any title to the property in question became vested with a title. An estoppel cannot be raised under a void act. (*Oregon R. & Nav. Co. v. Oregonian Ry. Co.,* 130 U. S. 1, 9 Sup. Ct. 409, 32 L. ed. 837; *Central Trans. Co. v. Pullman Palace Co.,* 139 U. S. 24, 11 Sup. Ct. 478, 35 L. ed. 55; *St. Louis Vandalia & Terre Haute R. Co. v. Terre Haute & Ind. R. Co.,* 145 U. S. 393, 12 Sup. Ct. 953, 36 L. ed. 748; *Thomas v. West R. Co.,* 101 U. S. 71, 25 L. ed. 950; *Penn. R. Co. v. St. Louis, A. & T. R. Co.,* 118 U. S. 290, 6 Sup. Ct. 1094, 30 L. ed. 83-284.)

"A contract made by a corporation beyond the scope of its power, express or implied, on a proper construction of its charter cannot be enforced or rendered enforceable by the application of the doctrine of estoppel." (*Union Pac. A. Co. v. Chicago R. I. & P. Ry. Co.,* 163 U. S. 564, 10 Sup. Ct. 1173, 41 L. ed. 265; *Kennedy v. California Bank,* 167 U. S. 362, 17 Sup. Ct. 831, 42 L. ed. 198; *McCormick v. Market Nat. Bank,* 165 U. S. 537, 17 Sup. Ct. 433, 41 L. ed. 817; *Merchants Bank of Valdosta v. Baird,* 160 Fed. 642.)

The parties relying upon estoppel must allege it with particularity and show that they were ignorant of the true condition, and acted upon misrepresentation of the other party to their prejudice. (*Ashley .v. Pick* (Or.), 100 Pac. 1103.)

K. I. Perky, John F. MacLane, and J. F. Colvin, for Respondents.

The construction of sec. 2387, U. S. Rev. Stat., is now well settled and free from doubt. The entry is made in trust for the occupants of the townsite, and their rights to the parcels

of land occupied by them become vested when the entry is made. Neither the trustee nor the surveyor can defeat or abridge the rights of the occupants to their lots, nor the rights of the people collectively to the streets and alleys, by preparing and filing a plat which interferes with outstanding rights of possession or travel. The surveyor and trustee must, in making and filing the plat, conform the lines of the streets to existing lot lines, and cannot run the street over land in the occupancy of an individual, nor on the other hand in such a manner as to deprive any other lot occupant of the right of ingress or egress afforded him by a recognized street or alley. (*Hall v. Ashby,* 2 Mont. 489; *Parchen v. Ashby,* 5 Mont. 68, 1 Pac. 204; *Ashby v. Hall,* 119 U. S. 526, 7 Sup. Ct. 308, 30 L. ed. 469; *City of Pueblo v. Budd,* 19 Colo. 579, 36 Pac. 599; *Bingham v. Walla Walla,* 3 Wash. 68, 13 Pac. 408; *McCloskey v. Pacific Coast Co.,* 160 Fed. 794, 87 C. C. A. 568; *Scully v. Squier,* 13 Ida. 417, 90 Pac. 573.)

Jacobs was one of the beneficiaries of the trust created by the act of Congress and the entry made thereunder. He was entitled to receive the deed as evidence of his rights, and the trustee could not have refused to give it to him. But the deed has a further and greater effect. It may have been that prior to the execution of the deed there was a doubt as to Jacobs' rights. But the trustee was authorized to pass upon those questions in the first instance, and opportunity was given to adverse claimants to contest any application by suit in the district court, and if no such contest should be filed the applicant became entitled to his deed, and such deed became conclusive as to all matters prior to the issuance of the deed affecting the claimant's right thereto. It has the same effect in determining matters of fact as a patent from the government. (*Twine v. Carey,* 2 Okl. 249, 37 Pac. 1096; *Myers v. Berry,* 3 Okl. 612, 41 Pac. 580; *Anderson v. Bartels,* 7 Colo. 256, 3 Pac. 225; *Taylor v. Winona & St. R. R. Co.,* 45 Minn. 66, 47 N. W. 453.) Such deed cannot be questioned in an action of ejectment, but only by a direct attack for fraud or the like. (*Larned v. Jenkins,* 113 Fed. 634, 51 C. C. A.

344, and cases last above cited; *Green v. Barker,* 47 Neb. 934, 66 N. W. 1032.)

The legislature, no more than the trustee, could defeat Jacobs' rights to the premises in his occupancy. (*Ashby v. Hall, supra; City of Helena v. Albertose,* 8 Mont. 499, 20 Pac. 817; *City of Pueblo v. Budd,* 19 Colo. 579, 36 Pac. 599.) The surveyor in platting Idaho street, and the legislature in adopting his plat by the act referred to, committed an error in so far as they attempted to destroy the rights of Jacobs. It was evidently in recognition of this error, and in an endeavor to correct the same, that the act in question was passed. Can there be any question but that the legislature had the power to pass this act? Could not that body, for the purpose of clearing a title which it had unauthorizedly clouded, undo their own wrongdoing? This act recites that these premises had never been used as a street. Now, whether this statute be private or public, its recitals are, if the act be private, conclusive evidence as between the parties, or, if public, they are conclusive evidence of the facts recited for the purpose of carrying it into effect. (Rev. Codes, sec. 5972.)

On rehearing counsel cite, on question of estoppel, the authorities referred to in opinion of the court.

SULLIVAN, C. J.—This is an action in ejectment brought by Boise City, a municipal corporation, against the defendants for a certain tract of land described as "Idaho street," running between blocks 115 and 116 in said city. The property in controversy is claimed by the city for street purposes by reason of the issuance of a patent by the United States, conveying the same to the mayor of Boise City in trust for the use and benefit of the occupants of the said townsite, dated May 2, 1870. That patent was based upon a plat of said original townsite, which was filed in the U. S. land office at Boise City on November 23, 1867, and on the 25th of said month, was filed in the county recorder's office of Ada county, the county in which said city is located, and was thereafter sent to the commissioner of the general land office

at Washington, on which plat the land in controversy appears as a part of Idaho street.

The defendants base their title and right to possession of said land upon an act of the legislature of Idaho Territory passed in 1871, entitled "An act to vacate Idaho street on the outskirts of Boise City," and by reason of a deed dated July 8, 1871, from Charles Himrod, the then mayor of Boise City, and trustee of the townsite of Boise City, to one Cyrus Jacobs, and the possession of said property by the said Jacobs under and by virtue of said deed.

The case was tried by the court with a jury and resulted in a verdict and judgment in favor of the defendants. This appeal is taken by the plaintiffs from the judgment and the order denying a new trial.

The following, among other facts, appear from the record: That the plat of the original townsite of Boise City was duly made and approved by the council of Boise City, and the streets and alleys thereon were declared to be public highways. Ordinance No. 2, approved November 27, 1867, is in part as follows: "Sec. 1.  Be it ordained by the city council of Boise City that on and after this date all streets and alleys as shown upon the plat of said Boise City, now on file in the office of the United States land office are, and the same are hereby declared public highways"; that the land in controversy was marked on said plat as a part of Idaho street, which plat was duly filed in the United States land office at Boise City on November 23, 1867, and in the office of the county recorder on the 25th of that month; that on May 2, 1870, the premises in controversy, including the entire townsite of Boise City were conveyed by patent from the United States to the mayor of Boise City in trust for the occupants of said townsite, to be by him disposed of as provided by law.  Said patent recites as follows:

"The United States of America to All to Whom These Presents Shall Come, Greetings:

"Whereas Henry E. Prickett, Mayor of Boise City, Ada County, Idaho Territory, in trust for the several use and benefit of the occupants of the townsite of Boise City ac-

cording to their respective interests by virtue of an act of the Congress approved March 2nd, 1867 (here follows a reference to the acts of Congress for the sale of public lands for townsite purposes and a description of the land included within said entry by metes and bounds), according to the official plat of the survey of the said lands returned to the General Land Office by the Surveyor General, which said tract has been purchased by the said Henry E. Prickett, Mayor as aforesaid in trust as aforesaid.

"Now know ye, that the United States of America, in consideration of the premises and in conformity with the several acts of Congress in such cases made and provided, have given and granted, and by these presents do give and grant unto the said Henry E. Prickett, Mayor as aforesaid in trust as aforesaid, and to his successors the said tract above described.

"To have and to hold the same, together with all the rights, privileges, immunities and appurtenances of whatsoever nature, thereunto belonging unto the said Henry E. Prickett, Mayor as aforesaid, in trust as aforesaid, and to his successors and assigns in trust as aforesaid."

Sec. 2387, U. S. Rev. Stat., under which said entry was made, is as follows:

"Whenever any portion of the public lands have been or may be settled upon and occupied as a townsite, not subject to entry under the agricultural pre-emption laws, it is lawful, in case such town be incorporated, for the corporate authorities thereof, and, if not incorporated, for the judge of the county court for the county in which such town is situated, to enter at the proper land-office, and at the minimum price, the land so settled and occupied in trust for the several use and benefit of the occupants thereof, according to their respective interests; the execution of which trust, as to the disposal of the lots in such town, and the proceeds of the sales thereof, to be conducted under such regulations as may be prescribed by the legislative authority of the State or Territory in which the same may be situated."

Under said provisions, a settler and occupant may demand and receive from the trustee a deed to the tracts to which he

is entitled on compliance with the rules and regulations pre-
scribed by the legislature.     (See act approved Jan. 6, 1871, 6th
Terr. Sess. Laws, p. 29.)     The first section of that act, among
other things, appoints the mayor of Boise City as trustee to
execute the trust in the manner and terms and under the
limitations specified in said act, and he is required to deliver
to the occupants of said lands deeds according to their respec-
tive interests, and publish notice in some newspaper, requir-
ing persons claiming lots in said townsite to present their
respective claims in writing.     Sec. 2 provides that the oc-
cupants of the townsite may at any time within sixty days
after the publication of the notice required by the first sec-
tion make . their respective applications for titles to such
portions of said townsite as are claimed by them; that such
written claim must name the lot and block or portion claimed
by each and must particularly designate and describe such
lots and blocks and improvements, which application must be
verified by oath, and provides that no claim shall be received
which does not conform to the requirements of that act; and
further provides as follows:

"That no claim shall be received for, nor any conveyance
made of any portion of, any street or alley that has hereto-
fore been declared public highways, or other lands, within the
limits of said city, which have been dedicated and appropri-
ated to public use, except for the use of said county and said
territory."

It will be observed that the above-quoted part of said act
of the legislature provides that no claim shall be received by
the mayor nor any conveyance made by him of any portion
of any street or alley that has theretofore been declared pub-
lic highways, and it will be observed from Ordinance No. 2
above quoted, which was approved on November 27, 1867,
two days after said plat had been filed in the office of the
county recorder of Ada county, and four days after it had
been filed in the United States land office at Boise City, that
the city council of Boise there declared that on and after
said date, "all streets and alleys as shown upon the plat of
said Boise City, now on file in the office of the United States

land office, are and the same are hereby declared public highways.'' The legislature, by the provisions of said act, recognized said plat and declared that the trustee should not convey any portion of any street or alley that had theretofore been declared public highways. Said act of the legislature was approved on January 6, 1871, more than three years after said plat had been filed with the county recorder, and approved by the city council, and the streets and alleys as shown on said plat had been declared public highways.

The land included in said townsite as entered by the mayor was of a peculiar shape—contained 442 acres and was located in secs. 3, 4, 9, 10 and 11, Twp. 3, N. R. 2 E., B. M., and said entire tract had been platted into lots, blocks, streets and alleys at the time the entry was made on November 23, 1867, and said plat was filed in the office of the surveyor general of the Territory of Idaho, as required by law, and in the United States land office at Boise City.

It also appears from the record that at the time said city was platted in 1867 one Cyrus Jacobs had several acres of land inclosed with a fence, including the tract of land in controversy with said block 115 and perhaps some other land, and was using the same as a pasture. It also appears that after the United States had so conveyed said land to the mayor of said city in trust, as aforesaid, the legislature of Idaho passed an act entitled, ''An act to vacate Idaho street on the outskirts of Boise City,'' which act was approved January 13, 1871. (6th Territorial Sess. Laws, p. 67.) The first section of said act is as follows:

''Sec. 1. That such portion of Idaho street, below and west of Fourteenth street and the alley on blocks 114 and 115, in Boise City, in the county of Ada, and Territory of Idaho, as designated on the map and plan of Boise City, on file in the office of the county recorder of said county (the same never having been used) be and the same is hereby vacated and closed.''

As the patent when issued related back to the date of the entry which was November 23, 1867, the city council had

the right to dedicate streets to public use at any time after the entry.

It also appears from the record that on July 8, 1871, the then mayor of said city, Charles Himrod, executed a deed purporting to convey the real estate in controversy to Cyrus Jacobs, which deed recites that on May 2, 1870, the United States of America, by its letters patent, dated on that day, according to the provisions of the several acts of Congress, and in conformity with such provisions, conveyed to Henry E. Prickett, the late mayor of said city, and to his successors in office, in trust for the several use and benefit of the occupants thereof, the lands included within the metes and bounds mentioned in said deed; and said deed further recites that on January 6, 1871, the legislative assembly of Idaho Territory passed an act for the disposal of said lands comprising the townsite of Boise City, as provided by said act of Congress; and further recites that said Jacobs has made due application and had in all things complied with the provisions and requirements of said act and is entitled to a deed to said premises, the same being a portion of said townsite, to wit: "All that certain ground formerly included in and being a part of Idaho street west of Fourteenth street and the alley on and running through the center of blocks 114 and 115, together with all of the estate, right, title and interest which was given and granted by the United States of America in trust by said letters patent." It also appears that the defendants herein all claim title from their common grantor, Cyrus Jacobs, under said deed from Mayor Himrod.

T. W. Randall, a witness on behalf of the plaintiff, testified that he owned said block 116 up to 1900; that obstructions were put there during the summer of 1900; that he found a pile of rock in said street and waited until the team and driver came with more rock, and had a conversation with the driver, whose name was Brown. Brown informed Randall at that time that he owned the property and that he put the rock there. Randall informed him that that was Idaho street, and that he himself owned block 116, and that was the

first obstruction in that street. Prior to that there were no houses in that street. He also testified that he had been familiar with this property about forty or forty-five years; that when he first knew the place, it was all open ground; afterward it was fenced in for a pasture; that said Jacobs claimed and used it for a pasture; that said Jacobs had inclosed there block 115; that said fence obstructed travel from that time on down, for more than thirty years, and that said premises had not been used as a street during that period of time. In the fall of 1899 or in 1900, Brown went ahead and built his house there, claiming he owned the land. Copies of the original maps and plats of the city were introduced in evidence, and also other oral testimony.

J. H. Hawley, ex-mayor of Boise City, a witness on behalf of the defendant, testified that in 1871 he was a member of the territorial legislature, and that during that session the property in controversy was the subject of legislative investigation; that Cyrus Jacobs claimed to be the owner of the premises at that time, and that there was a distillery there; that these premises were inclosed with a fence and were not used for street purposes; that Jacobs retained control of the premises until about 1901, when the street-car company was organized.

Ex-mayor Himrod testified that he was the mayor of Boise City for two terms; that he knew the property in controversy and knew Jacobs as early as 1864; that said Jacobs had a business on Idaho street, and he thought it was in 1867 he got possession of that property—it might have been in 1866; he had a grist-mill there first, and afterward a distillery.

James A. Pinney, ex-mayor of Boise City for five terms, testified on behalf of the defendants that he was acquainted with that portion of the city originally platted as Idaho street; that Jacobs had a grist-mill and distillery there, but he did not know whether it was right in the street or not; it was fenced in there from Main street to Bannock, and that Jacobs continued in possession until the 90's, about the time

the electric road was built; that the city never exercised any dominion over that portion of Idaho street.

J. H. Richards, ex-mayor of said city, another witness, testified that he was mayor of Boise City from 1899 to 1901, and was acquainted with Idaho street in the vicinity of 14th and 16th streets; that during that time the portion of Idaho street in controversy was not open as a street, and that the city exercised no dominion over it.

Two other ex-mayors testified that during their terms of office Boise City exercised no control over that part of Idaho street.

The defendants testified as to their improvements, the value thereof, etc., showing that such improvements had been put on during the year 1900 and since.

Upon these facts, is the city entitled to recover? That is the main question in the case.

Some question is raised by demurrer as to the misjoinder of parties plaintiff and defendant. There is nothing in that contention, as all of the parties, both plaintiffs and defendants, are interested in the result of this action, and are properly joined as parties. (Secs. 4101 and 4102, Rev. Codes; see, also, *Greer v. Mezes*, 65 U. S. 268, 16 L. ed. 661.)

It is also contended under the pleadings that the court erred in admitting certain evidence in regard to the possession of and improvements by the said Jacobs of said premises prior to the conveyance by Mayor Himrod to said Jacobs, and that it was error to admit evidence showing that said Jacobs had said land inclosed prior to the date of said deed. We think from the averments of the answer that the defendants should not have been permitted to introduce any evidence prior to the date of said deed, but in rebuttal of the evidence introduced by the city to the effect that Jacobs had no improvements on said street except a fence, it was proper to permit the defendants to rebut that evidence.

Under the provisions of said sec. 2387, U. S. Revised Statutes, the corporate authorities are authorized to enter as a townsite in the proper land office the land settled upon and

occupied "in trust for the several use and benefit of the occupants thereof, according to their respective interests." The rules and regulations of the land department of the United States require that in the entry of townsites, a plat of the land sought to be entered as a townsite must be filed with the United States land office in the district where such land is situated, which was done in the case at bar on November 23, 1867, at the date on which the then mayor made application to enter the said tract of land as a townsite; especially is such plat required when the townsite sought to be entered is not entered in accordance with the legal subdivisions as per government survey. It was upon that application and plat that the patent of the United States for said land was issued to the mayor of said city. The title passed to said mayor as trustee, and relates back to the date of the entry. "Entry," under said act, means the filing of the application by the proper officer with the register of the land office, and proof of the performance of the conditions in respect to the settlement and occupancy of the townsite. (*Lockwitz v. Larson*, 16 Utah. 275, 52 Pac. 279.) The lots and blocks in the plat were for the several use and benefit of the occupants of said town according to their respective interests, and the streets and alleys were dedicated to the use of such occupants and the public generally, who might want to use them for traffic and travel. The streets and alleys were dedicated to the use of the public generally, and especially to the use of the occupants, through said townsite plat and patent and by said ordinance of the city council. Under the United States law, townsite grants presuppose that the land included in such grants will be used for town or city purposes; that in order to use such townsite, it will be necessary to divide the same into lots and blocks, streets and alleys, and the law proceeds and rests upon that theory, and all settlers and squatters upon such land before entry, who have in no manner connected their settlements and claims with the government under any of its land laws, are supposed to take whatever interests they may have in accordance with the plat, which was the basis of said patent, and adjust their

holdings to such plat. It would, indeed, be an anomalous condition if settlers upon said townsite could settle upon and inclose lands therein as their own caprice, wish or desire might dictate, and disregard the plat made and adopted by the city council. In such a case, there could be no regularity whatever in streets and alleys. Jacobs had fenced more than a block,—not for city purposes, but for a pasture for stock, and thereafter placed a mill and afterward a distillery within such inclosure. The government disposes of parts of the public domain for townsite purposes, and under the townsite law land cannot be legally acquired for farm purposes. If Jacobs wanted the land he had inclosed for other than townsite purposes, he should have taken advantage of his prior settlement and improvement and entered it under the homestead or pre-emption laws of Congress, if he were a prior settler. The act of the territorial legislature (approved Jan. 6, 1871, Sixth Session Laws, p. 29) to provide for the disposal of lands in Boise City pursuant to the several acts of Congress, provided specially that the mayor-trustee should not convey to anyone any portion of any street or alley; and even if it had not been so declared, the trustee could not legally convey any part of said land that had been properly dedicated for a street, as he had no authority to convey it. It was in violation of his trust to attempt to convey a street.

The next question is: Had the legislature authority to vacate said street as it undertook to do by said act of January 13, 1871?

It had no such authority. The entry by the mayor and the issuance of the patent was under the authority of the act of Congress, sec. 2387 of which act is above quoted. The terms of that section are clear and explicit, and provide for the execution of said trust as to the disposal of the "lots" and the disposal of the proceeds of the sales thereof in accordance with such rules and regulations as may be prescribed by the legislature. That section contains no intimation that the legislature can prescribe rules for the disposal of the streets, but only for the disposal of the lots. What lots? Such as are shown by the plat which was the basis of said entry. The

lots might be disposed of under such rules as the legislature might provide, but the streets which were dedicated to the public could not be sold or vacated by edict of the legislature or by conveyance by the trustee.

In *Town of Aspen v. Rucker,* 10 Colo. 184, 15 Pac. 791, the court said:

"That the act of Congress required the whole townsite to be held in trust until finally disposed of as trust property, and that neither the legislature nor the court could change the character of the estate derived from the government from one in trust to one in fee simple, except first, by conveyances to beneficiaries who have complied with the law, and, second, by *bona fide* sales made by the trustee under such regulations as the legislature may prescribe."

Neither the legislature nor the mayor-trustee had any authority to dispose of a street that had been dedicated to the public, for the reason that such action would change the character of the trust in relation to the land dedicated for street purposes.

In *Newhouse v. Simino,* 3 Wash. 648, 29 Pac. 263, the court had under consideration an act of the legislature relating to the disposal of town lots entered under the provisions of said sec. 2387, U. S. Rev. Stat., and said:

"The providing of this machinery was left to the legislature of the territory, but of course the legislation thereunder must be harmonious with and not in opposition to the spirit of the grant."

The Idaho legislature in said act of January 13, 1871, and the mayor in said deed to Jacobs recognized that said land was "formerly a part of Idaho street," and should have known that their acts were in direct conflict with not only the spirit but the letter of the townsite laws of Congress and the grant in the patent of the United States to the mayor-trustee.

In *Clark v. Titus,* 2 Ariz. 147, 11 Pac. 312, the court said:

"The legislature of the territory had the power to regulate the manner of the disposal of the lots and the execution of the trusts. But there was no power to change or alter the

conditions of the trust. . . . . Any act of the legislature which would create a breach of said trust is void.''

Said act of the legislature and the mayor-trustees's deed to Jacobs undertook to commit a breach of said. trust, which they could not do, and their acts in that regard were absolutely void.

In *Boise City v. Hon,* 14 Ida. 272, 94 Pac. 167, this court held that neither the city officers nor other public officer has any power to defeat the right of the public in property dedicated to a public use.

In *Ashby v. Hall,* 119 U. S. 526, 7 Sup. Ct. 308, 30 L. ed. 469, in defining the power of the legislature in relation to the townsite acts of Congress, the court said:

''The power vested in the legislature of the territory in the execution of the trust, upon which the entry was made, was confined to regulations for the disposal of the lots and the proceeds of the sales. These regulations might extend to provisions for the ascertainment of the nature and extent of the occupancy of the different claims or lots, and the execution and delivery to those found to be occupants in good faith of some official recognition of title, in the nature of a conveyance. But they could not authorize any diminution of the rights of the occupants, when the extent of their occupancy was established. The entry was in trust for them, and nothing more was necessary than an official recognition of the extent of their occupancy. Under the authority conferred by the townsite act, the legislature could not change or close the streets, alleys and blocks of the town by a new survey. Whatever power it may have over them did not come from that act, but if it existed at all, from the general grant of legislative power under the organic act of the territory.''

Under the organic act of the territory of Idaho, no power is given to the legislature of the territory to vacate a street of a townsite entered under the provisions of the laws of Congress. The attempt of the legislature to do that was an assumption of unauthorized power in direct opposition and in conflict with the grant to the mayor as trustee of the lands embraced within the original townsite of Boise City. The

grant made by the patent was based upon the plat filed designating streets thereon, and such streets were dedicated by the city council to the use of the public, and it is not within the power of the mayor-trustee to deed away such streets to private individuals, for the reason that such dedication vests an absolute right in abutting owners which cannot be disturbed or abridged in that way.

In *Dooly Block v. Salt Lake Rapid Transit Co.,* 9 Utah, 31, 33 Pac. 229, 24 L. R. A. 610, it was held that the right of abutting owners to use a street as a means of access to their lots and for light and air is the same where the fee of the street is held by a city in trust for the use of the public as where the fee is owned by the abutting owners. Under the constitution the legislature or the mayor-trustee has no authority to take private property for public use without just compensation, nor has the legislature the authority to take public property for private purposes as it attempted to do in the case at bar. After Congress has dedicated land to public use as a highway and other public purposes, and the sale of lots abutting thereon to individuals has been made, the dedication cannot be revoked. (*Cook v. City of Burlington,* 30 Ia. 94, 6 Am. Rep. 649.)

In numerous cases the supreme court of the United States has held under the laws granting railroads the right of way that such grants were absolute to the railroad for the full width of the right of way granted, grants that could not be interfered with, and that the railroad company could not alienate any part of the right of way so granted. (*New Mexico v. United States Trust Co.,* 172 U. S. 171, 19 Sup. Ct. 128, 43 L. ed. 407; *Northern Pac. R. R. Co. v. Townsend,* 190 U. S. 267, 23 Sup. Ct. 671, 47 L. ed. 1044.)

As Jacobs acquired title by mayor's deed subsequent to the filing of the townsite plat, the issue of the patent, and the dedication of the streets to the public by the city council, he took said land subject to the easement created by the dedication. This was fully understood by Jacobs, as the act of the legislature attempting to vacate the street and the deed from Himrod, the mayor, to Jacobs, both referred to said property

as being a portion of Idaho street. Jacobs could not defeat the dedication of said street by having had the same inclosed with a fence or even a building on it, and the title of the defendants, if it attached at all, proceeded from the title that Jacobs obtained through his deed from the mayor. Jacobs was in no position to assert title to the land in question as against the public at the time of his conveyance; therefore his grantee will be in no better position than he was. In *Walla Walla v. Moore*, 2 Wash. Ter. 184, 2 Pac. 187, the court held that where a grantor is not in a position to assert his title to the land as against the public at the time of the conveyance, his grantee will, under similar circumstances, be in the same position. In that case the court further held that Baker, the original grantor, had by his acts so far adopted the townsite plat in reference to the particular portion thereof affecting this question, that he will not be allowed to make any claim in objection thereto.

In the case at bar, Jacobs certainly recognized the dedication of Idaho street on the plat of the original townsite of Boise City, as it is recited in his deed from the mayor as follows: "Ground formerly included in and being a part of Idaho street west of Fourteenth street and the alley on and running through the center of blocks 114 and 115."

Under the several acts of Congress in regard to the entry of townsites, as soon as the application is made, the plat filed, the proper proofs submitted, the money paid and the patent issued, the title passed to the trustee as of the date of the entry, and considering the application and plat as the basis of the patent, the terms of the patent were in effect that the streets indicated on the plat were dedicated to the use of the public, and were also so dedicated by the ordinance of the city above quoted. Where a street has been legally dedicated, it remains a street free from any interference by legislative authority, and the municipal authorities are the ones to say when the times and conditions are such that said property should be used for street purposes.

The contention of counsel for respondents is that said entry was made in trust for the occupants of the townsite,

and their rights to parcels of land occupied by them became vested when the entry was made, and it matters not in what irregular shapes such parcels or lots of land may be held or how irregular, the streets must be made to conform to such occupancy, and it is contended that the surveyor who plats the town and the trustee must, in making and filing the plat, conform the lines of the street to the existing lot lines, and cannot run the street over land in the occupancy of an individual. We cannot agree with this contention, and the history of the application of the townsite laws of Congress refutes such contention. Counsel cites in support of his contention, *Hall v. Ashby,* 2 Mont. 489, and *Parchen v. Ashby,* 5 Mont. 68, 1 Pac. 204. It seems in those cases there had been two plats and two surveys; the later one was made by the probate judge and did not conform to the earlier one. In the latter case the court said:

"The plat and survey of the probate judge must conform to the old survey, by which the occupants had held and occupied their lots prior to the entry of the townsite; otherwise his plat and survey are so far void."

It seems that lots had been sold and occupied under the old survey, and the court further said:

"The occupants of lots under the old survey acquired certain easements, rights and interests in and to the streets and alleys which had been opened and used as such, adjacent to the lots so occupied. The trust in the probate judge attached to these rights and easements the same as it did to the lots themselves. . . . . All the powers of the probate judge as trustee are exhausted when he has conveyed to the occupants their lots according to their several rights and interests."

In that case it appears that a survey of the townsite had been made and the occupants held their lots in accordance with such survey, and recognized and used the streets in accordance with such survey. That being true, the survey made under the direction of the probate judge should have conformed to the first survey under which the occupants held their lots.

Counsel also cites the *City of Pueblo v. Budd,* 19 Colo. 579, 36 Pac. 599, and contends that it is squarely in point. The court said:

"It appears from the pleadings that the land was not used or laid out as a street before or at the time of the entry of the townsite; nor has it ever been so used, and the designation of it as such is first found on the plat filed by the trustee. The town of Pueblo being unincorporated, the inhabitants had a vested interest in streets and alleys opened and used at the time of the entry of the townsite, but they had no interest in the land in dispute as a street that the trustee was authorized to preserve; and his act in designating the same as a part of Third street was unauthorized and void."

In that case the townsite plat by which the trustee held the title thereto designated the land in dispute as a street, but such designation did not conform to the streets and alleys opened and used at the time of the entry of the townsite. In the case at bar, Jacobs was not holding said land in conformity with any street, while the occupants of the townsite of Pueblo were holding their lots in conformity with certain streets in which the court held they had vested rights. That is the distinguishing feature between the case at bar and that case.

In *McCloskey v. Pac. Coast Co.,* 160 Fed. 794, 87 C. C. A. 568, the court said:

"The streets contemplated by the act, and as to which a public right attaches, are those which in fact existed at the time of the entry, either by actual use or by dedication, and the trustee cannot, by any act of his own, dedicate a street."

In the case at bar the city council had dedicated Idaho street to the public immediately after the mayor made the townsite entry and nearly four years before said mayor's deed was executed.

Counsel for appellants contend that this court has announced the doctrine contended for in *Scully v. Squier,* 13 Ida. 417, 90 Pac. 573. That case is not in point here, as

the facts of that case are very different from the facts in the case at bar. In that case, the mayor filed his application to enter the Lewiston townsite on the 21st day of November, 1871, in trust for the inhabitants of that city, claiming settlement in 1861. Said entry was made in accordance with the legal subdivision as per government survey and not in utter disregard of such legal subdivisions, as was the entry of the Boise City townsite. It appears that the purchase price for the land was not paid and final proof was not made until June 6,1874. Said entry was made under the provisions of said sec. 2387, U. S. Rev. Stat., and in pursuance of said entry and the statute, the legislature of the territory of Idaho passed an act providing for the survey, platting and disposal of the lands included in said Lewiston townsite entry, which act was approved January 8, 1873. (See 7th Session Laws, p. 16.) It also appears that only a part of the land entered had been platted. Said act provides, among other things, that within twenty days after the receipt of the patent from the government, the mayor-trustee should give notice thereof in a newspaper requiring all persons claiming land within said entry to present their respective claims therefor in writing, and the first section of said act further provides as follows: "The said mayor-trustee shall at the same time also cause to be made and filed in his office by a competent person, a plat of said land divided into blocks and lots to such an extent as may be deemed requisite by the said mayor-trustee. . . . ." And the second section provides that the streets, lanes, alleys and other rights of way which may be in common use at the time of the enforcement of said act within said city over the land described were thereby declared to be highways for the use and benefit of the inhabitants of the city, and that the survey and platting of the said land into lots and blocks and acres, or parts of the same, should conform thereto; that the survey and platting of the land described in said patent should be so as to divide the blocks into lots to be, whenever practicable, each fifty feet in width and one hundred feet in depth, and the fractional block or blocks, lot or lots, acre or acres should be

so arranged and adjusted as to conform to the condition of the improvements and occupation at the time of the enforcement of the act, and that where streets, alleys, roads or other rights of way had obtained or might have been reserved or claimed by the inhabitants in common, as streets, alleys, roads or other rights of way, and might be occupied at the time of the enforcement of this act, by individuals, were thereby declared to be public highways for the proposed use and benefit of the inhabitants of said city. It will be observed that this act providing for the disposal of the lands within the townsite of Lewiston is very different from the act providing for the disposal of the lots and blocks within Boise City. The survey there was made after the patent was issued to the mayor, and the surveyor employed to replat said portion of the town which had theretofore been platted was directed to conform to the condition of the improvements and the occupation at the time of the enforcement of the act, and it was clear to the court in that case that the surveyor failed to make said plat of 1874 conform to the plat of the city at the time the entry was made in 1871. The plat of 1874 was not the plat upon which the entry of the townsite was based; while in the case at bar, the entry of the townsite of Boise City was based upon a plat made and filed in the local United States land office at the time the entry was made, and was, within a day or two thereafter, filed in the office of the county recorder of the county in which said city is located. So the rule laid down in the Scully-Squier case is not applicable to the case at bar.

The main point in this suit is as to the validity of the dedication of Idaho street as against Jacobs. There is no question but what the dedication of said street, so far as the occupants of said townsite were concerned, was valid. It is contended that Jacobs was one of the beneficiaries of the trust created by the act of Congress and the entry made by the mayor. That may be conceded to be correct, but that would not give Jacobs any claim or right to any portion of a street or alley that had been theretofore declared a public highway under his occupancy as shown by the evidence.

Under the provisions of the act of the legislature which provided for the disposal of the lands in Boise City, the mayor-trustee was prohibited from receiving any claim or making any conveyance to any portion of any street or alley which had been declared a public highway.

Regardless of the views above expressed and the law therein applied, it is clear to us from the facts of the case that the equities are with the defendants, and that the doctrine of equitable estoppel should be applied in the case. Jacobs evidently took possession of said premises as early as 1867, and inclosed the same with a fence. Patent was issued to the mayor-trustee on May 2, 1870. On January 14, 1871, the legislature undertook, after an examination of the matter, to vacate Idaho street, so far as the premises in dispute are concerned. The mayor-trustee thereafter, on July 8, 1871, conveyed to said Jacobs the disputed premises, or at least undertook to do so, and it may be gathered from the evidence that Jacobs erected thereon a mill and a distillery; that said street never was used as a street and was always recognized by the Boise City authorities as private property. Five ex-mayors of the city, covering a period of more than thirty years, testified in effect that the disputed premises had been looked upon and considered as private property, and that the city had not undertaken to exercise any authority over it whatever, so far as a street was concerned. It thus appears that the *locus in quo* in this case has been held and claimed as private property for a period of forty years, and such claim not disputed by the city. Several dwelling-houses have been erected upon said premises without objection from the city authorities. Under all of those facts, we consider that the equities are clearly with the defendants, and the judgment of the lower court must be sustained. While the statute of limitations does not apply in cases of this character, the rule of equitable estoppel does apply. (See *Jordan v. City of Chenoa,* 166 Ill. 530, 47 N. E. 191.) It matters not whether the theory upon which the lower court rendered its decision was the correct theory or not, so long as under the pleadings and the evidence the court arrived

at a correct conclusion and entered a correct judgment. If it entered a correct judgment, the judgment will be affirmed.

The judgment must therefore be sustained, with costs in favor of respondents.

AILSHIE, J., Concurring.—In concurring in the opinion in this case, I think it proper to make some brief observations as to the grounds upon which the respondents' rights are to be rested. In the first place, Jacobs took paper title to this street from the mayor of the city. The mayor in turn was the legal representative of the city and held title to the townsite as trustee. Holding, as we do, that the territorial legislature had no power or authority to authorize the closing up and vacating of the street, and that the mayor had no authority to make the deed, or execute the conveyance to Jacobs, still the deed gave the grantee color of title. (*Johnson v. Hurst,* 10 Ida. 308, 77 Pac. 784; *Coe v. Sloan, ante,* p. 49, 100 Pac. 354; *Cameron v. United States,* 148 U. S. 301, 13 Sup. Ct. 595, 37 L. ed. 462.) Jacobs was therefore in possession under color of title. He and his grantees and successors in interest have been continuously in possession of the premises under color of title for a period of more than forty years. The legislative act (approved Jan. 13, 1871, 6th Ter. Sess. Laws, p. 67) has been on the statute books of the territory and state for thirty-eight years, and during that entire period of time has never been questioned by the city of Boise nor by any citizen, taxpayer or resident thereof. On the contrary, this legislative act has been treated by the city and every public official representing it continuously for a period of nearly forty years as a valid and binding legislative act. The municipality has dealt with the occupants of this tract of land during all that period of time on the theory that they were the owners of that property in fee simple. The city is therefore in the position of having encouraged and induced these owners to make valuable and permanent improvements upon the property, and of attempting to so change their position and relation with reference to the property that it would now, at

this late date, work an effectual fraud upon them to allow the city to maintain its action in ejectment against them. There has been for forty years a nonuser of this so-called public easement and right of way.

We recognize the fact that ordinarily the doctrine of laches and estoppel may not be invoked against a municipality on account of the action or inaction or conduct of its public officers. This, however, is more especially true with reference to their acts and conduct in governmental and purely municipal affairs. It has never been held with the same strictness in reference to purely business and proprietary matters and transactions. There are many cases, however, in which the doctrine of laches and estoppel has been invoked as against municipalities where they have recognized so-called private rights for a great number of years, and have stood by while valuable improvements were being erected, and it would work a fraud and irreparable wrong and injury upon the private individual to allow the city to invoke a stale legal right.

In the case of *Paine Lumber Co. v. Oshkosh*, 89 Wis. 449, 61 N. W. 1108, the supreme court of Wisconsin held that although a public corporation cannot alienate public streets and places, and that mere laches on its part cannot defeat the public rights thereto, still cases may arise where private rights have grown up so as to be paramount to the public rights, and where the prevention of injustice requires the assertion of the doctrine of equitable estoppel *in pais* for the just protection of such paramount private rights. This portion of the opinion was cited with approval in *Reuter v. Lawe*, 94 Wis. 300, 59 Am. St. 891, 68 N. W. 955, 34 L. R. A. 733. So in the case of *Chicago v. Sawyer*, 166 Ill. 290, 46 N. E. 759, the Illinois supreme court said:

"While this doctrine of equitable estoppel will be applied in proper cases to a municipal corporation, where it represents public rights and interests, the municipality will be estopped or not, in respect to such public right or interest, as justice and right may require. Such an estoppel can only be set up as a means of preventing injustice, where

there has been a change of conduct induced by the act of the municipal corporation and as a means of preventing a fraudulent result.''

There is a long line of authorities in Illinois holding to the same effect, as may be seen by an examination of the case of *Jordan v. City of Chenoa*, 166 Ill. 530, 47 N. E. 191. In the latter case the court applied the doctrine of laches and estoppel to the city where it had not used an alley for more than twenty years, and had stood by while the occupant had placed valuable and permanent improvements on the property and during the meanwhile had recognized his ownership therein. (See, also, 2 Smith on Municipal Corporations, sec. 1671; 2 Dillon on Municipal Corporations, 3d ed., sec. 667; *County of Boone v. Burlington & Mo. R. Co.*, 139 U. S. 684, 11 Sup. Ct. 687, 35 L. ed. 319; *State ex rel. Polk Co. v. West*, 68 Mo. 232.) The latter case is cited and approved to the same effect in *Dunklin County v. Chouteau*, 120 Mo. 594, 25 S. W. 553. (See, also, *Hesse v. Strode*, 10 Ida. 250, 77 Pac. 634; *People v. Alturas Co.*, 6 Idaho, 418, 55 Pac. 1067, 44 L. R. A. 122.)

We entertain no purpose or intention of in any manner departing from the rule laid down in *Boise City v. Hon*, 14 Ida. 282, 94 Pac. 167, wherein we said: ''Neither the city officers nor any other public officer would have any power to defeat the right of the public in property thus dedicated to public use.'' The facts, however, involved in that case, differ materially and essentially from the facts of the present case. There neither the city nor its officers or legal representatives had in any manner acted to the prejudice of the occupancy of the city. No attempt had been made to abandon the street or convey the title to the occupant and trespasser. It worked no fraud upon the occupant to allow the city to maintain its action against him for the recovery of the possession of the street. The case at bar falls within the exception instead of the rule. This exception is very clearly indicated and pointed out in 2 Dillon on Municipal Corporations, sec. 667 et seq.

Under the facts of this case, we have no doubt but that it is the duty of this court to hold that the appellant's claim is stale and that the doctrine of laches and estoppel should be invoked as a protection to respondents.

Stewart, J., concurs.

## ON REHEARING.

(June 2, 1909.)

AILSHIE, J.—A rehearing was granted in this case for the purpose of enabling the appellants to make argument and present authorities on the question of equitable estoppel. It was contended on reargument that the respondents had not sufficiently pleaded an equitable estoppel to justify the court in applying that principle to this case. Our examination of the answer satisfies us that there is sufficient in the answer to justify and authorize the court in applying this principle to the case at bar. The defendants have pleaded all the facts surrounding the transaction, and also the fact that they have made large improvements on the property with the sanction, approval and consent of the city, and that the city has from time to time recognized their title and rights, and levied, assessed and collected taxes and special assessments against this property.

After hearing further argument in the matter, and examining the authorities cited, we are still of the opinion that there are exceptional cases in which the doctrine of estoppel and laches should be applied to a municipal corporation, and that this is peculiarly a case falling within the exceptions to the general rule. It is only applied in cases where its application is essential to prevent great wrong and injustice being committed against the adverse party. It may be conceded that both the city and the respondents and their predecessors in interest have acted with equal knowledge of the facts concerning the title; but that is ordinarily true in cases of adverse possession. The respondents, however, in this case, have been allowed to alter their situation with

reference to this property in the evident belief that they had the right to do so, and that the city would not interfere, and this belief has been generated, increased and, to an extent, confirmed by the long and continuous delay and acquiescence of the city. Not only this, but the city has from time to time done affirmative acts recognizing the respondents' title and right of possession. This has been done in the way of levying taxes and special assessments on this identical property in addition to the other acts enumerated in the original opinion in the case.

We recognize that, as a general rule, the doctrine of estoppel does not apply to municipal corporations, and we are not unmindful of the fact that the courts of many states have absolutely refused to apply it to such corporations. We are not prepared, however, to announce an unalterable and unexceptionable rule in this state which would inevitably result in perpetrating wrong and injustice in exceptional cases like this. Courts of equity are established for the administration of justice in those peculiar cases where substantial justice cannot be administered under the express rules of law, and to adopt a rigid rule that recognizes no exceptions would be to rob such courts of much of their efficacy and power for administering even-handed justice. The people in their collective and sovereign capacity ought to observe the same rules and standard of honesty and fair dealing that is expected of a private citizen. In their collective and governmental capacity, they should no more be allowed to lull the citizen to repose and confidence in what would otherwise be a false and erroneous position than should the private citizen.

In addition to the authorities cited in the original opinion in support of the position taken by the court, we call attention to the following cases which have been cited by respondent: *Town of Searcy v. Yarnell,* 47 Ark. 269, 1 S. W. 319; *Arapahoe Co. v. City of Denver,* 30 Colo. 13, 69 Pac. 586; *New York N. H. & H. Ry. Co. v. City of New Haven,* 46 Conn. 257; *Logan Co. v. City of Lincoln,* 81 Ill. 156; *Martel v. City of E. St. Louis,* 94 Ill. 67; *City of Joliet v. Wer-*

Points Decided.

*ner,* 166 Ill. 34, 46 N. E. 780; *City of Chicago v. Ill. Steel Co.,* 229 Ill. 303, 120 Am. St. 258, 82 N. E. 286; *City of El Paso v. Hoagland,* 224 Ill. 263, 79 N. E. 658; *Grant v. City of Davenport,* 18 Ia. 179; *Simplot v. City of Dubuque,* 49 Ia. 630, 56 Ia. 639, 10 N. W. 221; *Burroughs v. City of Cherokee,* 134 Ia. 429, 109 N. W. 876; *City of Troy v. Atchison & N. Ry. Co.,* 13 Kan. 70; *Moore v. City of New Orleans,* 32 La. Ann. 726; *New Orleans Ry. Co. v. City of New Orleans,* 109 La. Ann. 194, 33 So. 192; *Union Depot Co. v. City of St. Louis,* 76 Mo. 393; *Schock v. Falls City,* 31 Neb. 599, 48 N. W. 468; *Baldwin v. City of Buffalo,* 29 Barb. 396; *Curnen v. City of New York,* 79 N. Y. 511; *Board of Supervisors v. Schenck,* 72 U. S. 772, 18 L. ed. 556.

The judgment must be affirmed, and it is so ordered, with costs in favor of respondents.

Sullivan, C. J., concurs.

Stewart, J., concurs in the conclusion reached.